IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYRONE BURNS, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11-CV-1104-NJR-DGW |
| | ) |
| JAMES FENOGLIO,[1] | ) |
| | ) |
|       Defendant. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, Tyrone Burns, an inmate housed at the Lawrence Correctional Center ("Lawrence"), filed a Complaint on December 19, 2011, pursuant to 42 U.S.C. § 1983, alleging that a number of prison officials and health care providers were deliberately indifferent to his serious medical need in violation of the Eighth Amendment. This matter was originally dismissed at screening in August 2012 for failure to state a claim upon which relief could be granted, and judgment was entered (Doc. 13). On appeal, however, the Seventh Circuit Court of Appeals vacated the judgment and remanded this matter as to the claims against Defendant James Fenoglio, a doctor at Lawrence (Doc. 32). Plaintiff now is proceeding on a single count that Dr. Fenoglio was deliberately indifferent to his serious medical need by delaying treatment for a painful tumor in his

---

[1] The Clerk of Court is **DIRECTED** to correct the docket sheet to reflect the true spelling and full name of Defendant. "Dr. Fenoglio" should be changed to James Fenoglio.

right hip for an eight month period beginning in November 2010.

This matter is currently before the Court on Dr. Fenoglio's motion for summary judgment, which he filed on May 1, 2014 (Doc. 68). Burns filed a timely response in opposition to the motion for summary on June 2, 2014, which addressed the merits of Dr. Fenoglio's argument and provided additional evidence for consideration (Doc. 71). For the reasons set forth below, the motion for summary judgment is denied.

## BACKGROUND

The undisputed facts reveal that Burns first noticed a lump the size of a walnut on his right hip in April of 2010 while he was not incarcerated (Doc. 69-1, p. 6). He went to the emergency room at John Stroger Hospital in Chicago, Illinois, where he was prescribed pain medication[2] and instructed to appear at a follow-up visit (*Id.* at pp. 5–6). At a follow-up visit in May 2010, Burns was told by a doctor that a biopsy would need to be performed (*Id.* at p. 5). Prior to the biopsy being performed, however, Burns was arrested for armed robbery and incarcerated (Doc. 69-2, p. 2).

Burns was held at the Cook County Jail for the first couple weeks following his arrest, and then he was transferred to Stateville Correctional Center during the first

---

[2] Burns could not remember the name of the pain medication that he was prescribed (*see* Doc. 69-1, p. 6). He stated that it was not ibuprofen, and it started with an "H" (*Id.*). He guessed that it was hydrocortisone (*Id.*), which is used to treat inflammation, arthritis, allergies, and asthma. U.S. National Library of Medicine, Medline Plus, *Hydrocortisone Oral*, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682206.html (last visited Dec. 17, 2014). The Court thinks it is more likely that Burns was prescribed hydrocodone, which is used to relieve severe pain. U.S. National Library of Medicine, Medline Plus, *Hydrocodone*, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a614045.html (last visited Dec. 17, 2014).

week of June 2010 ("Stateville") (*Id.*). When he arrived at Stateville, Burns was examined by Dr. Diane Schwartz, who referred him to Dr. Sylvia Mahone, the head doctor (*Id.* at p. 7). A week later, on June 22, 2010, he was seen by Dr. Mahone (*Id.* at p. 8; Doc. 71, p. 8). Burns complained that the lump was getting bigger and that it hurt when he walked (Doc. 71, p. 8). Dr. Mahone prescribed ibuprofen for the pain and referred Burns to the University of Illinois at Chicago Medical Center for a biopsy (Doc. 69-1, p. 8; Doc. 71, p. 8; *see* Doc. 69-2, p. 6). The referral order indicated that the matter was "urgent" (Doc. 71, p. 8). According to Burns, Dr. Mahone told him that she thought the condition might be lymphoma, which is a form of cancer (*Id.*; Doc. 69-2, p. 2). On the referral order, however, Dr. Mahone noted that it was a "probable lipoma," which is a "benign form of a soft tissue growth" (Doc. 71, p. 8; Doc. 69-2, p. 2). Dr. Mahone's referral was denied on collegial review, and an alternate plan was approved which placed Burns on a medical hold and directed that he should be re-evaluated the following month (Doc. 71, p. 9).

Burns put in another sick call, and he was seen by Dr. Mahone on June 28, 2010 (Doc. 69-2, p. 6). Dr. Mahone noted that Burns's lab results were within normal limits and his xray was negative (*Id.*). Dr. Mahone prescribed Tylenol to Burns because he complained that the ibuprofen was not helping the pain (*Id.*). According to Burns, at that time, his pain was "like an eight out of ten," but Dr. Mahone would not give him "strong enough medication" (Doc. 69-1, p. 9). Burns also testified that Dr. Mahone told him to be patient because it could take up to six months to receive outside treatment (*Id.* at p. 8).

Burns testified that he was taking the over-the-counter pain medication "like they

were candy because he was in so much pain" (*Id.* at p. 9). He stated "I don't wish that pain on anybody, man. It was just horrible." (*Id.*). He further testified that the over-the-counter pain medication helped a little bit at first, but as the lump grew, it did nothing to alleviate his pain (*Id.* at pp. 9–10). He continued taking the over-the-counter pain medication because it was all he had; he stated "I would eat four or five of them things, the 800's" (*Id.*). But after three or four months, the medication negatively affected his stomach and his bowel movements (*Id.* at p. 9).

Burns was at Stateville until November 2010, at which time he was transferred to Lawrence (*Id.* at p. 10; Doc. 69-2, p. 2). He indicates that during the approximately six months that he was incarcerated at Stateville, the lump grew in size, he experienced severe pain, the pain medication did not help and was causing undesirable side effects, he could not sleep on his right side, and he could not exercise, which caused him to gain thirty pounds (Doc. 69-1, pp. 8–11). No biopsy had been performed by the time he was transferred to Lawrence (*Id.* at p. 10).

Upon his arrival at Lawrence, Burns underwent a reception screening by a nurse on November 16, 2010 (Doc. 69-2, p. 7). The nurse noted that he had a tumor on his right hip (*Id.*). According to Burns, the nurse told him that he would automatically be put in to see Dr. Fenoglio (Doc. 69-1, p. 12).

By January 2011, Burns still had not seen Dr. Fenoglio, so he put in a sick call request (*Id.* at p.12). Burns testified that he saw Dr. Fenoglio sometime in January 2011, and the following exchange occurred:

> Yeah, when I first seen him he said, he looked at my hip, and he was like, man, what is that? And I was like, man, it's a tumor. And he said oh don't worry about it, it might go away. I said, man, if you look at my chart, it has been there for the past seven months. What do you mean it is going to go away? This was Doctor Fenoglio's first words to me.

(*Id.* at pp. 12, 13–14).

Dr. Fenoglio disputes that he saw Burns in January 2011. He states that Burns's medical records show that he was seen by a nurse on sick call on February 16, 2011 (Doc. 69-2, pp. 2, 9). It was noted that Burns had a lump on his right hip, and the plan at that time was to schedule him to see Dr. Fenoglio on the first available date (*Id.*). According to Dr. Fenoglio, Burns "refused the 'MD Line' per Lawrence security" on February 18, 2011 (Doc. 69-2, pp. 2, 9).[3]

Both parties agree that Burns saw Dr. Fenoglio on March 24, 2011 (Doc. 69-1, p. 14; Doc. 69-2, pp. 2, 11). Burns complained that the lump "aches and hurts," and he told Dr. Fenoglio that he was supposed to have it cut out before he went to prison and while he was at Statesville (Doc. 69-2, p. 11). Dr. Fenoglio noted that Burns had a firm, rubbery mass on his right hip that was "nontender" and "about the size of palm of one's hand" (*Id.* at p. 12). Dr. Fenoglio ordered a soft tissue x-ray (*Id.* at pp. 2, 12). He did not prescribe any pain medication at that time (*see id.* at pp. 11–12).

The xray was taken on March 28, 2011, and Dr. Fenoglio noted that it showed "a tissue density mass of about the size of egg but is not very distinct on its superior

---

[3] The Court is not certain but assumes this means that someone was sent to fetch Burns for an appointment with the doctor, but Burns refused to go.

borders" (Doc. 69-2, pp. 12, 13). That same day, Dr. Fenoglio completed a referral for a biopsy of the lump (*Id.* at p. 14). On collegial review, it was noted that the mass was "approx. the size of an orange" (*Id.* at p. 16). The biopsy referral was denied on collegial review, but an alternate plan for an onsite ultrasound was approved (*Id.* at pp. 3, 16).

The ultrasound was performed on April 12, 2011 (*Id.* at p. 17). The ultrasound showed "complex cystic and solid lesions" and a solid mass that measured 2.4cm lengthwise and 16mm in diameter (Doc. 69-2, pp. 3, 16). Thirteen days later, on April 25, 2011, Burns had a follow-up visit with Dr. Fenoglio (*Id.* at pp. 3, 18). Burns again complained of pain from the lump, and Dr. Fenoglio wrote Burns a thirty-day prescription for 400mg of ibuprofen (*Id.*). Dr. Fenoglio also completed another referral for a biopsy (*Id.*). The referral was approved on collegial review on May 3, 2011 (*Id.* at pp. 3, 20, 21). It took another ten days for the biopsy to be scheduled at the Carle Clinic on May 25, 2011 (*Id.* at p. 3).

Burns underwent the biopsy on May 25, 2011 (Doc. 69-2, p. 3). No medical records from the biopsy were submitted to the Court. According to Burns, the doctor at the Carle Clinic "took a needle about this long . . . about 12 inches, and did an incisional biopsy, and he drained 70 CC's of fluid off my hip" (Doc. 69-1, p. 16). The doctor conducting the biopsy also indicated that Burns had a hematoma, and he recommended immediate surgery to remove two nodules (*Id.*).

Two days later, on May 27, 2011, Burns had a follow-up visit with Dr. Fenoglio (Doc. 69-2, pp. 3, 22). Dr. Fenoglio noted that Burns's pain was "manageable now" after

having the fluid drained (*Id.* at p. 22). He also noted the presence of "atypical cells" of "uncertain significance" (*Id.* at pp. 3, 22, 23). According to Burns, however, his pain remained the same after the fluid was drained and did not improve until the lump was actually removed (Doc. 69-1, p. 17). Burns also testified that Dr. Fenoglio told him that there was no cancer, but they discovered nodules which were causing his pain, and he was going to be referred for surgery (*Id.* at p. 16). Dr. Fenoglio completed a referral for an excisional biopsy, which was approved on collegial review on May 31, 2011 (Doc. 69-2, pp. 3, 23, 24).

Burns was seen for a surgery consultation by Dr. Daniel Pontius, a general surgeon, at Lawrence County Memorial Hospital on June 20, 2011 (Doc. 71, p. 11; Doc. 69-2, p. 3; Doc. 69-1, p. 4, 17). Dr. Pontius was concerned about a sarcoma,[4] and therefore recommended that Burns be sent to the Carle Clinic to see a surgical oncologist (*Id.*; Doc. 69-2, pp. 4, 25). According to Burns, Dr. Pontius said that he "[was] not touching it" because he was worried that it was cancerous (Doc. 69-1, p. 17). Dr. Pontius also questioned why Burns was sent to him and not simply sent back to the Carle Clinic (*Id.*).

Two days later, on June 22, 2011, Burns had a follow-up visit with Dr. Fenoglio (Doc. 69-2, p. 25). The doctor refilled Burns's prescription for ibuprofen and completed a referral for an evaluation by a surgical oncologist (*Id.* at pp. 25, 26). The referral was approved on collegial review, and Burns was scheduled to see Dr. Eddy Hsueh at St.

---

[4] Sarcoma is a cancer of the soft tissue. U.S. National Library of Medicine, Medline Plus, *Soft Tissue Sarcoma* http://www.nlm.nih.gov/medlineplus/softtissuesarcoma.html (last visited Dec. 17, 2014).

Louis University Hospital on June 29, 2011 (Doc. 69-2, pp. 4, 25, 26).[5] No medical records from the visit were submitted to the Court.

On July 5, 2011, Burns had a follow-up visit with Dr. Fenoglio (Doc. 69-2, p. 28). According to Dr. Fenoglio's notes, Dr. Hsueh recommended an excisional biopsy (*Id.* at pp. 4, 28). Dr. Fenoglio wrote Burns a thirty-day prescription for 100mg of Ultram[6] and completed a referral for an excisional biopsy (*Id.*). The referral was approved on collegial review on July 12, 2011 (*Id.* at pp. 4, 29). It took another week for the surgery to be scheduled for August 2, 2011 (*Id.* at 4, 30).

Burns underwent surgery to have the lump removed on August 2, 2011. Burns submitted the operative report and pathology report as evidence (Doc. 71, pp. 12–16), but neither party submitted Dr. Hsueh's notes. The pathology report indicates that the mass that was removed measured 4 cm x 2.9 cm x 2.3 cm (Doc. 71, p. 15). According to Dr. Fenoglio, Burns had a "benign organizing hematoma or cystic structure" (Doc. 69-2, pp. 4, 32). Burns testified that it took him about two weeks to recover from the surgery and then he was pain free (Doc. 69-1, p. 18). He further testified that Dr. Hsueh prescribed antibiotics and therapy, but he did not receive those recommended treatments (*Id.* at p. 19).

---

[5] The medical records indicate that prior to seeing Dr. Hsueh, Burns underwent an abdominal ultrasound on June 27, 2011, the results of which were negative (Doc. 69-2, p. 27).

[6] Ultram is a brand name for Tramadol, which is an opiate analgesic used to relieve moderate to moderately severe pain. U.S. National Library of Medicine, Medline Plus, *Tramadol*, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html (last visited Dec. 17, 2014).

# DISCUSSION

## A. Legal Standard for Summary Judgment

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the Court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial . . . . A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

## B. Analysis

Burns claims that Dr. Fenoglio was deliberately indifferent to his serious medical need because the doctor delayed scheduling Burns for surgery to remove the mass in his right hip and failed to prescribe effective pain medication prior to the surgery.

Prison physicians are liable under the Eighth Amendment for cruel and unusual punishment if they are deliberately indifferent to an inmate's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on a deliberate indifference claim, there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). First, a plaintiff must demonstrate that his medical condition was "objectively, sufficiently serious." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). Second, a plaintiff must demonstrate that the "prison officials acted with a sufficiently culpable state of mind," meaning that the prison officials knew that the prisoner's medical condition posed a serious risk to the prisoner's health, but they consciously disregarded that risk. *Greeno*, 414 F.3d at 653; *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

**1. Serious Medical Need**

Dr. Fenoglio first argues that he is entitled to summary judgment because Burns was not suffering from a serious medical need (Doc.76, p. 8). The Court disagrees.

A serious medical condition is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007). "Notably, '[a]medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)

(quoting *Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010)).

The evidence shows that the lump on Burns's hip was growing, causing severe pain, and limiting his ability to sleep and exercise. There is no suggestion in the record that Burns was exaggerating his symptoms or malingering, or that his pain was caused by some other medical condition. Furthermore, three outside physicians opined that Burns needed treatment and recommended surgery to have the lump removed—the doctor at the Carle Clinic who performed the needle biopsy, Dr. Pontius, and Dr. Hseuh. There is nothing in the record that indicates any of these doctors considered the surgery to be elective or cosmetic. In fact, Dr. Pontius was concerned that the lump could be cancerous. Taken together and viewed in a light most favorable to Burns, a reasonable jury could find that the mass constituted a serious medical need.

### 2. Deliberate Indifference

Dr. Fenoglio next argues that he is entitled to summary judgment because he was not deliberately indifferent to Burns's serious medical need (Doc. 76, 12). Again, the Court disagrees.

Prisoners are not entitled to receive "unqualified access to healthcare"; instead, they are only entitled to "adequate medical care." *Holloway v. Delaware Cnty. Sheriff,* 700 F.3d 1063, 1073 (7th Cir. 2012) (citations omitted). Furthermore, "[t]here is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field." *Id.* (quoting *Jackson v. Kotter,* 541 F.3d 688, 697 (7th Cir. 2008)). Accordingly, in order for a prison medical professional to be held

liable for deliberate indifference, his or her treatment decisions must be "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Holloway*, 700 F.3d at 1073 (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). In other words, a prison medical professional is "entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Sain*, 512 F.3d at 894–95).

Additionally, a delay in providing effective medical treatment can constitute deliberate indifference if the delay unnecessarily prolonged an inmate's pain. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) (quoting *McGowan*, 612 F.3d at 640). "Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference." *Smith*, 666 F.3d at 1040.

It is indisputable that while Burns was incarcerated at Lawrence, Dr. Fenoglio evaluated him multiple times, ordered an xray and ultrasounds, sent him for consultations with specialists, and eventually approved a biopsy and surgery to remove the lump. But the fact that Burns received *some* medical attention does not foreclose his deliberate indifference claim. *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011). He can still prevail if Dr. Fenoglio's response was blatantly inappropriate in the face of his

pain and the likelihood that his condition was worsening. *Id.*

The evidence, when viewed in a light most favorable to Burns, shows that he complained a number of times that he was in severe pain and that the lump was growing. Despite his complaints, Burns did not receive any pain medication for the first five months that he was at Lawrence.[7] After that, for approximately two and half months, he received only over-the-counter pain medication that was ineffective. It was not until one month before the surgery to remove the lump that Dr. Fenoglio prescribed Burns something stronger. Additionally, Burns was at Lawrence for six months before the lump was biopsied and approximately eight and half months before the lump was surgically removed. Eight and a half months seems unnecessarily long to wait to have a large, increasingly expanding, painful, and potentially cancerous mass removed. It is hard to imagine that a doctor seeing a civilian patient would have waited that long.

Dr. Fenoglio stated in his affidavit that "the ordering and scheduling of the Plaintiff's medical care was appropriate in light of the clinical findings" (Doc. 69-2, p. 4). Dr. Fenoglio did not explain the basis for his conclusory assertion, however, and he did not present any evidence showing that his decisions were actually consistent with accepted professional judgment, practice, or standards for treating a patient who presents with a condition like Burns's. Furthermore, Dr. Fenoglio did not address why he prescribed only over-the-counter pain medication when Burns repeatedly complained that he was still in pain.

---

[7] Based on the evidence submitted to the Court, Dr. Fenoglio did not prescribe Burns any pain medication until April 25, 2011. *See supra* p. 6.

Accordingly, Dr. Fenoglio has failed to put forth sufficient evidence to show that he is entitled to judgment as a matter of law that he was not deliberately indifferent to Burns's serious medical need. Viewing all of the evidence in a light most favorable to Burns, a reasonable jury could infer that Dr. Fenoglio substantially departed from professional judgment by waiting to authorize a biopsy and surgical removal of Burns's lump and continuing to treat him with ineffective pain medication.

## CONCLUSION

For these reasons, the motion for summary judgment filed by Defendant James Fenoglio (Doc. 68) is **DENIED**. The Final Pretrial Conference and Trial will be reset by separate order. The Clerk of Court is **DIRECTED** to correct the docket sheet to reflect the true spelling and full name of Defendant. "Dr. Fenoglio" should be changed to James Fenoglio.

**IT IS SO ORDERED.**

DATED: December 23, 2014

s/ Nancy J. Rosenstengel
**NANCY J. ROSENSTENGEL**
**United States District Judge**