IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TYRONE BURNS,

    Plaintiff,

vs.

JAMES FENOGLIO, M.D.

    Defendant.

Case No. 3:11-cv-1104

## TRIAL BRIEF

Plaintiff is an inmate in the custody of the Illinois Department of Corrections, currently housed at Illinois River Correctional Center. Prior to entering the Illinois correctional system, Plaintiff noticed a mass on his right hip which became painful. He sought treatment at John Stroger Hospital on May 14 and 18, 2010, where the doctors performed a CT scan, prescribed narcotic pain medication, and scheduled a biopsy on June 4, 2010.

Plaintiff entered custody following arrest at the Northern Receiving Center at Statesville. The chief medical director, Dr. Sylvia Mahone, reviewed the radiology reports and recommended a surgical consult and biopsy in June 2010. While Plaintiff awaited a biopsy, he was transferred by the Illinois Department of Corrections to Lawrence Correctional Center, where he was under the custody and care of Defendant James Fenoglio, M.D. Despite the CT scan and x-rays performed in May 2010, Plaintiff spent the next eight months undergoing needless tests that provided less information than the initial scan, and received only ibuprofen and acetaminophen, even though the maximum daily dose of each did not control his pain. During that time, Plaintiff gained in excess of 50 pounds due to pain and limited mobility, because the tumor attached to the connective tissue on his right hip/thigh area pulled every time he moved his leg. As the tumor grew in size, Plaintiff's pain increased. In July 2011, Dr.

Fenoglio prescribed Ultram, a narcotic pain medication, "because he was continuing to complain even though he had been on ibuprofen or Tylenol." (Ex. 1 at 90-91).

Despite the initial CT scan's note that mass was likely an old hematoma, Defendant treated the mass as a lipoma, concluding, that despite Plaintiff's complaints of pain, it was "not really painful" (Ex. 1 at 51-53), although the records contain no indication Plaintiff was magnifying his complaints (Ex. 1 at 52-53). On August 2, 2011, Dr. Hsueh, the Chief of General Surgery at St. Louis University removed the mass, and pathology confirmed it was a hematoma attached to Plaintiff's fascia.[1] The surgeon prescribed narcotic pain medication following the surgery, which Dr. Fenoglio did not provide to Plaintiff despite drug protocols in place at the prison. (Ex. 1 at 94-95). Although Defendant submitted an affidavit to the Court in connection with his Motion for Summary Judgment stating that he had reviewed all of the records regarding Plaintiff's condition, he failed to note that shortly after Plaintiff's surgery, while still under his care, he began to complain of recurrent hip pain from the organizing hematoma. (Ex. 1 at 96-99). Plaintiff continues to experience symptoms from the reoccurrence of his right hip mass.

## ISSUES OF LAW

Plaintiff expects several issues of law to arise during trial, in addition to those raised in its motion in limine, which is incorporated herein by reference.

### 1. Proof of Deliberate Indifference

Deliberate indifference does not require evidence of objective evidence of a serious medical need, a sensible rule when Defendants often control Plaintiff's ability to seek outside medical treatment. "There is no requirement that a prisoner provide "objective" evidence of his pain and suffering—self-reporting is often the only indicator a doctor has of a patient's

---

[1] Fascia is the connective tissue that holds muscles in place, and flexes to hold muscle tissue in place every time they move,

2

condition." *Cooper v. Casey*, 97 F.3d 914, 916–17 (7th Cir.1996) ("[T]he fact that a condition does not produce "objective" symptoms does not entitle the medical staff to ignore it.... [S]ubjective, nonverifiable complaints are in some cases the only symptoms of a serious medical condition.") cited in *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). Plaintiff will offer numerous medical records to show contemporaneous complaints of pain, weight gain, increase in the size of the mass on his hip, requests for medication, and requests for tests and treatment, while Defendant performed unnecessary tests, prescribed ineffective pain medication based on a misdiagnosis of the kind of mass present, and declined repeated requests for a biopsy despite concerns regarding cancer.

Defendant's contention that the August 2011 finding that the mass was not cancer relieves it from liability is unsupported by Seventh Circuit law. Ineffective treatment, misdiagnosis, and refusal to provide effective testing or treatment are sufficient to support an Eight Amendment verdict.  As the Seventh Circuit explained:

> Defendants fail to acknowledge that Greeno spent two years trying to obtain "objective" evidence, but was prevented from doing so by Dr. Daley and the other medical providers. The possibility of an ulcer was first noted in Greeno's chart in August 1995. For the next year-and-a-half the defendants doggedly persisted in a course of treatment known to be ineffective, behavior that we have recognized as a violation of the Eight Amendment. In addition to denying Dr. Avestruz's January 1997 request that Greeno be referred to a specialist, Dr. Daley then issued an emphatic ban on treatment for Greeno. Dr. Daley's March 1997 directive that Greeno was to receive "no pain medications" and "no gastroscopy" reinforces Greeno's theory that the repeated refusal to uncover or effectively treat his condition was a "gratuitous cruelty." The fact that the endoscopy, when finally performed, did lead to successful treatment makes it all the more obvious that Dr. Daley and the other medical staff should have responded earlier to Greeno's requests for further testing.

*Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (citing *Kelley v. McGinnis*, 899 F.2d 612, 616–17 (7th Cir.1990) (per curiam) (prisoner could prevail on Eighth Amendment claim with evidence that defendants "gave him a certain kind of treatment knowing that it was ineffective");

*see also Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir.2004) (Eighth Amendment violated when authorities expose inmates to " 'undue suffering' " by denying reasonable requests for medical treatment); *White v. Napoleon*, 897 F.2d 103, 108 (3d Cir.1990) (Eighth Amendment claim stated with allegations of multiple instances when prison doctor "insisted on continuing courses of treatment that the doctor knew were painful [or] ineffective").

### 2. Damages

Plaintiff intends to present evidence of post-surgical pain, weight gain, and other medical findings to show that his pain and disability continued, without treatment, following the surgery, and that those complaints went untreated until Defendant left Lawrence Correctional Center. This evidence is not a separate claim, but a recurrence of the same claim. The findings and testimony of Dr. Coe show a reoccurrence of the same condition that began in May 2010, and Dr. Coe's recognition of the condition shows the risk of pain was obvious. *See Gibson v. Moskowitz*, 523 F.3d 657, 662-63 (6th Circuit 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994))("The question . . . is also whether circumstantial evidence, including the very fact that the risk was obvious shows the employee must have understood the nature of the risk.").

### 3. Affirmative Defenses

Although Defendant treats his employer's policy of "collegial review" as an affirmative defense, the law recognizes no such thing, and the evidence regarding it is speculative, hearsay, improper opinion evidence and an attempt to change the standard of care owed under the Eighth Amendment. For reasons explained in the Motion in Limine, such evidence is inadmissible.

The sole remaining defense is qualified immunity, which is unavailable to medical professionals employed by private companies retained by the state in correctional facilities.  The Seventh Circuit recently held:

> If there is any lack of clarity in our previous cases, however, it is only with respect to the threshold issue whether the defense of qualified immunity is ever available to private medical care providers like the defendants. This ambiguity is of no help to the defendants: if private medical care professionals are categorically barred from claiming immunity, like guards employed by a privately run prison facility, it is unnecessary to consider whether the defense may be invoked by Chhabra and Reynolds on these particular facts. The Supreme Court recently considered the question whether an individual hired by the government to do its work is prohibited from seeking absolute or qualified immunity, solely because he works for the government on something other than a permanent or full-time basis. It held that "immunity under § 1983 should not vary depending on whether an individual working for the government does so as a full-time employee, or on some other basis." On the other hand, the *Filarsky* Court reaffirmed the holding of *Richardson* categorically rejecting immunity for the private prison employees there; in so doing, the Court emphasized that the incentives of the private market suffice to protect employees when "*a private firm, systematically organized to assume a major lengthy administrative task for profit and potentially in competition with other firms*," assumes responsibility for managing an institution. In a detailed opinion tracking the Court's analysis in Filarsky, the Sixth Circuit recently held that a doctor providing psychiatric services to inmates at a state prison is not entitled to assert qualified immunity. We find the Sixth Circuit's reasoning persuasive, though we need not definitively decide the issue today; even if our defendants were entitled to seek qualified immunity as a general matter, we would conclude that the defense is not applicable here.

*Currie v. Chhabra*, 728 F.3d 626, 631-32 (7th Cir. 2013) (citing *Filarsky v. Delia*, 132 S.Ct. 1657, 1660 (2012)(collecting cases)(citations and marks omitted). As both the Supreme Court and the Seventh Circuit noted, the presence of market forces perform the function needed by qualified immunity for state employees, and the risk of suit is built into the cost structure the state pays for those services. *See id.; see Richardson v. McKnight*, 521 U.S. 399, 412 (1997) (because private contractors carried on prison management activities in the 19th century and the "organizational structure of a private prison management company is one subject to the ordinary competitive pressures that normally help private firms adjust their behavior in response to the incentives that tort suits provide." private prison guards do not enjoy qualified immunity from suit in a § 1983 case).

5

Moreover, even if Defendant could show a right to assert the defense of qualified immunity, which he cannot, a prisoner's right to adequate medical care is an established constitutional right. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.") Defendant does not have a right to present evidence about or instruct the jury on qualified immunity.

TONKIN & MONDL, L.C., and
Courtney C. Stirrat, IL Bar #6305084

/s/ Courtney C. Stirrat
701 Market Street, Suite 260
St. Louis, Missouri 63101
Tel: 314/231-2794
Fax: 314/231-1481
cstirrat@tonkinmondl.com
**ATTORNEY FOR**
**TYRONE BURNS**

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, April 29, 2015, a copy of the foregoing was filed electronically. Notice of the filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

/s/ Courtney C. Stirrat